UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL P. McCREE,                                    Civil Action No.:
*on behalf of himself and others similarly situated*,
                    Plaintiff,          29 U.S.C. §216(b)
                                               COLLECTIVE ACTION & FED.
                                               R. CIV. P. 23 CLASS ACTION

               -against-                    **VERIFIED COMPLAINT**

THE COUNTRY CLUB AT OTTERKILL, LLC,                **DEMAND FOR JURY TRIAL**
JOSEPH BETRO, ERIN PASCUAL, and JOHN
DOES as the top 10 Shareholders of THE COUNTRY
CLUB AT OTTERKILL, LLC,

                        Defendants.
-------------------------------------------------------------X

       Plaintiff Michael P. McCree, on behalf of himself and others similarly situated, by and through his attorney, Jennifer S. Echevarria, Esq., hereby complains of the Defendants as follows:

<u>**THE PARTIES**</u>

       1.      At all relevant times herein, Plaintiff Michael P. McCree ("Plaintiff" or "Plaintiff McCree") maintained a residence in the Town of Wappingers Falls, County of Dutchess, State of New York.

       2.      At all relevant times herein, Defendant The Country Club at Otterkill, LLC (hereinafter "Otterkill"), was and is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 100 Otter Road, Campbell Hall, County of Orange, State of New York.

       3.      Otterkill is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

4.      At all times relevant herein, Otterkill purchased and handled goods moved in interstate or foreign commerce, including food, alcoholic and non-alcoholic beverages, and restaurant equipment.

5.      At all relevant times herein, upon information and belief, Defendant Joseph Betro was part owner and manager of Otterkill.

6.      At all relevant times herein, upon information and belief, Defendant Erin Pascual was part owner and manager of Otterkill.

7.      At all relevant times herein, upon information and belief, Defendants Joseph Betro and Erin Pascual were two of the top ten largest shareholders of Otterkill.

8.      At all relevant times herein, Defendants John Does, whose identities are presently unknown, were the other top 10 largest shareholders of Otterkill.

9.      Defendants Otterkill, Joseph Betro, Erin Pascual, and the John Does identified in Paragraph "8" (jointly the "Defendants"), were Plaintiff's employers as that term is defined by the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYSLL").

10.     Starting on or about March 27, 2021 until March 8, 2023, Defendants employed Plaintiff as an executive chef at Otterkill.

11.     At all relevant times herein, Defendants hired, fired, supervised, controlled, paid, and maintained employee records for Plaintiff.

12.     As described below, Defendants acted intentionally and maliciously to deprive Plaintiff and other employees similarly situated of their wages and ultimately terminated Plaintiff McCree in retaliation for complaining of same.

## JURISDICTION AND VENUE

13.     Jurisdiction is appropriate under 28 U.S.C. §1331 as this action pertains to violations of Federal Law, to wit, the FLSA at 29 USC 201, *et seq.*, as well as violations of the NYSLL, which can be heard by this Court pursuant to 28 U.S.C. §1367(a).

14.     Venue is based on Defendants' the place of business, the place where the acts and occurrences complained of herein occurred, and Plaintiff's residence, and is appropriate in this District pursuant to 28 U.S.C. §§ 112(b) and 1391(b) and (c).

## STATEMENT OF FACTS

### *Introduction*

15.     Defendants committed the acts described below knowingly, intentionally, willfully, and maliciously against Plaintiff and other, similarly situated employees.

16.     At all times relevant herein, Defendants knowingly, willfully and maliciously failed to pay Plaintiff McCree and similarly situated employees their promised wages, going weeks, months, and years without paying wages owed.

17.     In addition, Defendants knowingly, willfully and maliciously paid Plaintiff and similarly situated employees in cash and failed to pay overtime for each hour worked over forty (40) hours in any given week.

18.     At all relevant times herein, Plaintiff and similarly situated employees were misclassified as salaried employees, were not exempt under Federal and/or State laws and were required to be paid time and a half for all overtime worked in each one-week work period.

19.     Defendants intentionally failed to pay Plaintiff and similarly situated employees properly and timely as evidenced by their refusal to provide wage statements required by NYSLL Section 195(3) when employees were paid in cash.

3

20.     After Plaintiff persistently demanded – verbally and in writing – that his owed wages be paid, Defendants terminated him.

### Facts

21.     Plaintiff McCree began to work for Defendants in or around March 27, 2021, when he was hired by Defendant Erin Pascual as an executive chef.

22.     At the time of hiring, Plaintiff was given an offer letter which stated that his salary would be $1,346.15 per week starting March 27, 2021, until on or about July 10, 2021; starting on or about July 10, 2021, and pending a positive employment review in June 2021, he was to be given a raise to $1,634.62 per week.

23.     For the first forty-six (46) weeks of his employment, i.e., from March 27, 2021, through February 13, 2022, Plaintiff was not paid every week as stated in the offer letter.

24.     Instead of being paid weekly, Plaintiff was paid in cash on or around the following dates:

      a)  June 5, 2021, paid $10,000.00;

      b)  July 11, 2021, paid $6,000.00;

      c)  September 19, 2021, paid $4,000.00;

      d)  October 31, 2021, paid $6,000.00; and

      e)  November 14, 2021, paid $5,000.00.

25.     After the first fifteen (15) weeks of employment, Plaintiff had a positive performance review and was given the raise promised by the offer letter.

26.     During the first forty-six (46) weeks of his employment, and taking into account the different wages for the first fifteen (15) weeks, Plaintiff should have grossed seventy thousand eight hundred sixty-five dollars and forty-seven cents ($70,865.47).

27.    Instead, Plaintiff was paid a total of thirty-one thousand dollars ($31,000.00) as stated in paragraph 24, above.

28.    When Plaintiff was paid as stated in paragraph 24, above, he did not receive a written statement showing the time worked or wages earned during that particular pay period.

29.    On February 20, 2022, Plaintiff began to be paid by check on a weekly basis, and at that time he was paid his full salary and was given a paystub.

30.    However, on February 20, 2022, Defendants did not pay Plaintiff any of the money he was owed for the first forty-six (46) weeks of employment.

31.    At the end of February 2023, and in the beginning of March 2023, Plaintiff began to persistently request that Defendants pay him the wages that were owed, including a text message exchange with Defendant Joseph Betro on March 7, 2023, wherein Plaintiff told Betro how much was owed and Betro disagreed with him regarding the amount.

32.    The following day, on March 8, 2023, Defendants terminated Plaintiff for allegedly discussing his sobriety and opioid treatment while at work.

33.    At all relevant times herein, Plaintiff has been in recovery for past opioid addiction and has been sober since November 2018, which the Defendants knew at the time Plaintiff was hired.

34.    Defendants used the discussions of Plaintiff's sobriety at work as a pretextual reason to terminate Plaintiff; the real reason that they terminated Plaintiff was because he was demanding to be paid the wages that he had earned over a year earlier.

35.    In any event, the pretextual reason that Defendants gave for terminating Plaintiff was illegal under the Americans with Disabilities Act and the New York State Human Rights Law.

36.     During his time working for Defendants, Plaintiff would regularly work approximately seventy (70) hours a week, although there were times that he would have to work eighty (80) to ninety (90) hours a week.

37.     Plaintiff was hired as an exempt, salaried employee, but he did not fit the requirements under the NYSLL in order to be classified as such, to wit, he was not paid on a weekly basis, he did not have the authority to hire and fire employees, his suggestions and recommendations as to hiring and firing employees was not given particular weight, he did not customarily and regularly exercise discretionary powers on behalf of Otterkill, and he did not manage Otterkill or a department thereof.

38.     Upon information and belief, other similarly situated employees were also not properly classified, were not paid or not paid timely, and/or were not paid for overtime work.

### *Collective Action Allegations*

39.     Plaintiff McCree brings his claims individually and on behalf of all other current and former exempt and non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through the entry of judgment in this case (the "Collective").

### *Class Allegations*

40.     Plaintiff McCree also brings his claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former exempt and non-exempt workers employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

41.     The Class members are readily ascertainable.  The Class members' names, phone numbers, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records.  Notice can be provided by means permissible under Rule 23.

Numerosity

42.     The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

43.     Although the precise number of such persons is unknown, and the facts on which the calculation of the precise numbers are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

Commonality

44.     There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: 1) whether Defendants employed the Collective and/or the Class members within the meaning of Federal and NY law; 2) whether the Class members were paid for all time worked; 3) whether the Class members were paid overtime rates (i.e., time and a half) for all hours worked over forty (40) per week; and 4) whether the Class members were given proper and accurate wage statements as required by Labor Law Section 195(3).

Typicality

45.     Plaintiff McCree's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

46.     All the Class members were subject to the same policy and practice of not paying employees timely and/or for all hours worked, not paying overtime for all hours worked over forty (40) a week, and not being provided accurate wage statements.

47.     Defendants' policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

48.    Plaintiff McCree and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies and practices.

Adequacy

49.    Plaintiff McCree is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

50.    Plaintiff McCree is represented by an attorney who is experienced and competent in representing plaintiffs in wage and hour employment litigations.

Superiority

51.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

52.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

53.    Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

54.    Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; treating the claims as a class action would result in a significant saving of these costs.

55.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests though actions to which they were not parties.

56.    The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

57.    Upon information and belief, Defendants and other employers throughout the State violate the NYSLL and current employees are often afraid to assert their rights out of fear of direct or indirect retaliation; former employees are fearful of bringing claims because doing so can harm their future employment and efforts to secure employment.  Class actions provide class members who are not named in the Complaint with a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

**FIRST CLAIM ON BEHALF OF PLAINTIFF, THE COLLECTIVE AND THE CLASS
FOR FAILURE TO PAY WAGES
UNDER FAIR LABOR STANDARDS ACT 29 U.S.C. 206 and 215**

58.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "57" as though fully set forth at length herein.

59.    Plaintiff worked for defendants for forty-six (46) weeks from March 27, 2021, through February 13, 2022, without being paid weekly or on a consistent pay day, and went weeks, months, and years without being paid the wages that he had earned.

60.    Upon information and belief, others similarly situated were also not paid timely, consistently, or at all for the hours, days and weeks that they worked.

61.    Defendants were aware that they were violating the FLSA when they failed to pay Plaintiff and similarly situated employees for all the time that they worked as they are sophisticated businesspersons that have, upon information and belief, been in business for a long time and knew that employees were not choosing to work for free.

62.    By failing to pay Plaintiff, the Collective and the Class wages for all the time they worked, Defendants willfully violated FLSA at 29 U.S.C. 206 and 215.

63.    Plaintiff, the Collective and the Class are entitled to wages at their regular rate(s) of pay for every hour that they worked under forty (40) per week without compensation.

64.    Plaintiff in particular is due at least $34,961.61 in unpaid wages for time worked between March 27, 2021, to February 13, 2022.

65.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

66.    Therefore, Plaintiff, on behalf of himself, the Collective and the Class, demands payment of unpaid regular wages and an equal amount in liquidated damages under FLSA 29 U.S.C. 216(b), prejudgment interest on said unpaid wages, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**SECOND CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS**
**FOR FAILURE TO PAY WAGES**
**UNDER NEW YORK STATE LABOR LAW SECTIONS 652, 663(1) AND 198(1-a)**

67.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "66" as though fully set forth at length herein.

68. Plaintiff worked for defendants for forty-six (46) weeks from March 27, 2021, through February 13, 2022, without being paid weekly or on a consistent pay day, and went weeks, months, and years without being paid the wages that he had earned.

69. Upon information and belief, others similarly situated were also not paid timely, consistently, or at all for the hours, days and weeks that they worked.

70. Defendants were aware that they were violating the NYSLL when they failed to pay Plaintiff and similarly situated employees for all the time that they worked as they are sophisticated businesspersons that have, upon information and belief, been in business for a long time and knew that employees were not choosing to work for free.

71. By failing to pay Plaintiff and the Class wages for all the time they worked, Defendants willfully violated NYSLL Section 652.

72. Plaintiff and the Class are entitled to wages at their regular rate(s) of pay for every hour that they worked under forty (40) per week without compensation.

73. Plaintiff in particular is due at least $34,961.61 in unpaid wages for time worked between March 27, 2021, to February 13, 2022.

74. Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

75. Therefore, Plaintiff, on behalf of himself and the Class, demands payment of unpaid wages and an equal amount in liquidated damages under NYSLL Sections 198(1-a) and 663(1), prejudgment interest on said unpaid regular wages, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

## THIRD CLAIM ON BEHALF OF PLAINTIFF, THE COLLECTIVE AND THE CLASS
## FOR FAILURE TO PAY OVERTIME WAGES
## UNDER FAIR LABOR STANDARDS ACT

76.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "75" as though fully set forth at length herein.

77.     Given that Plaintiff was misclassified as an exempt, salaried employee, he was not paid overtime for any hours over forty (40) hours that he worked in any given week.

78.     In addition, Plaintiff witnessed other employees getting paid in cash for hours that they worked over forty (40) hours in a week, but those cash payments were at the employees' regular rate of pay and not at overtime rates, i.e., they were not paid time and a half for overtime work.

79.     Defendants violated the FLSA at 29 U.S.C. 207 and 215 by employing Plaintiff, the Collective and the Class, in an enterprise engaged in commerce for workweeks longer than those prescribed in FLSA Section 207 without compensating them for their employment in excess of forty (40) hours per week at a rate of not less than one- and one-half times the regular rate at which they were employed.

80.     Plaintiff McCree has not previously initiated a complaint for the relief claimed herein before any other court.

81.     Therefore, Plaintiff demands, on behalf of himself, the Collective and the Class, payment of unpaid overtime compensation and an equal amount in liquidated damages under FLSA Section 216(b), prejudgment interest on said unpaid overtime compensation, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**FOURTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS
FOR FAILURE TO PAY OVERTIME WAGES
UNDER NEW YORK STATE LABOR LAW**

82.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "81" as though fully set forth at length herein.

83.     Given that Plaintiff was misclassified as an exempt, salaried employee, he was not paid overtime for any hours over forty (40) hours that he worked in any given week.

84.     In addition, Plaintiff witnessed other employees getting paid in cash for hours they worked over forty (40) hours in a week, but those cash payments were at the employees' regular rate of pay and not at overtime rates, i.e., they were not paid time and a half for overtime work.

85.     Defendants willfully violated the New York State ("NYS") Minimum Wage Orders of the Commissioner of Labor of the NYS Department of Labor, at 12 NYCRR 142-2, by refusing to compensate Plaintiff and the Class a wage rate of one and one-half times their regular rates of pay for each hour that they worked over forty (40) hours in any given week.

86.     Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

87.     Therefore, Plaintiff, on behalf of himself and the Class, demands payment of unpaid overtime compensation and an equal amount in liquidated damages under NYLL Sections 198(1-a) and 663(1), prejudgment interest on said unpaid overtime compensation, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**FIFTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS
FOR FAILURE TO PROVIDE PROPER WAGE STATEMENTS AS REQUIRED BY
NEW YORK LABOR LAW SECTION 195(3)**

88.     Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "87" above as though fully set forth at length herein.

89.    NYSLL Section 195(3) requires that employers furnish employees with a statement with every payment of wages listing, among other things, the number of regular and overtime hours worked that period; the regular, overtime and prevailing wage rates; and the wages being paid that week.

90.    For the first forty-six (46) weeks of his employment, Plaintiff McCree was not given any wage statements under NYSLL Section 195(3) when he worked without pay nor when he was paid in cash; thereafter, the statements he did receive did not properly record the total number of hours that he worked or the overtime wages that he had earned.

91.    Upon information and belief, similarly situated employees also did not receive statements and/or did not receive accurate statements when they were paid.

92.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

93.    Therefore, Plaintiff, on behalf of himself and the Class, demands payment of two hundred fifty dollars ($250.00) for each workday that the violations occurred up to five thousand dollars ($5,000.00) for each employee, together with costs and reasonable attorney's fees, as provided under NYSLL Section 198(1-d), and such other and further relief that this Court deems just and proper.

### SIXTH CLAIM BY PLAINTIFF McCREE
### FOR RETALIATORY DISCHARGE
### UNDER NEW YORK LABOR LAW SECTION 215

94.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "93" above as though fully set forth at length herein.

95.    Section 215(1)(a) of the NYSLL prohibits an employer from discharging or otherwise retaliating against an employee that has in good faith made a complaint to his employer

that he reasonably believes the employer has violated provisions of the NYSLL; explicit reference to any section or provision in the NYSLL is not required.

96.     Section 215(2)(a) of the NYSLL provides that an aggrieved employee may bring a civil action against an employer that has so discharged and/or retaliated against him, within two years of the discharge and/or retaliation, and that said employee will be entitled to all appropriate relief including liquidated damages up to $20,000.00, payment of costs and reasonable attorney's fees associated with bringing the action, reinstatement with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages.

97.     In this case, Plaintiff McCree complained to Defendants on several occasions, at least two of which are documented by text messages and/or emails, wherein McCree complained that he was owed wages from the first forty-six (46) weeks of his employment, including a complaint by text message on the evening before he was fired.

98.     Plaintiff McCree had a reasonable and good faith belief that said actions by Defendants violated the NYSLL.

99.     Within hours of Plaintiff's most recent complaint about wages to Defendant Joseph Betro, he was terminated for a pretextual and illegal reason, i.e., for discussing his sobriety and on-going medical treatment in support of that sobriety, to co-workers while working.

100.    Defendants' termination of Plaintiff was in retaliation for his complaint and therefore violates NYSLL.

101.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

102.    Therefore, Plaintiff demands payment of $20,000.00 in liquidated damages, payment of costs and reasonable attorney's fees associated with bringing this action, an award of

front pay in lieu of reinstatement, an award of lost compensation and damages, and such other and further relief that this Court deems just and proper.

## JURY DEMAND

103.    Plaintiff demands a trial by jury on all questions of fact.

**WHEREFORE**, Plaintiff, on behalf of himself and on behalf of the Collective and the Class, prays that this Honorable Court:

a.  Accept jurisdiction over this matter;

b.  Empanel a jury to fairly hear and decide this matter;

c.  At the earliest practicable time give notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as exempt and non-exempt hourly workers.  Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe that they suffered wage theft at the hands of Defendants;

d.  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

e.  An injunction against Defendants, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

f.  An award of regular and overtime wages for all of Plaintiff, the Collective and the Class's time worked without wages and/or without being paid properly for overtime work;

g. An award of $5,000.00 to each employee in the Class, including Plaintiff, for Defendants' failure to provide them with the proper wage statements required by NYSLL 195(3);

h. An award to Plaintiff McCree of the maximum damages available under NYSLL Section 215 of $20,000.00 for his retaliatory discharge plus an award of front pay in lieu of reinstatement and an award of lost compensation and damages;

i. An award of interest on the wages found to be owed, at the rate of nine percent per year from the date the wages were earned, pursuant to Section 5004 of the NY Civil Practice Law and Rules;

j. An award of reasonable attorneys' fees;

k. An award representing the costs and disbursements of this action; and

l. Any other and further relief that this Court deems just and proper.

Dated: Warwick, New York
        June 5, 2023

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA*
*Collective, and potential Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) Jennifer@EchevarriaLawPLLC.com

### VERIFICATION

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF ORANGE           )

Michael P. McCree, being duly sworn, says:

I am the Plaintiff in the action herein.

I have read the annexed Verified Complaint dated June 5, 2023, know the contents thereof and the same are true to my knowledge, except those matters therein which are alleged upon information and belief and as to those matters I believe them to be true.

MICHAEL P. McCREE

Sworn to before me this
5 day of June, 2023

NOTARY PUBLIC

JENNIFER S. ECHEVARRIA
Notary Public, State of New York
No. 02EC6212466
Qualified in Orange County
Commission Expires October 13, 2025

18